UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CARLA L. JONES,                               Case No. 14-14809

            Plaintiff,                    Hon. Avern Cohn
v.                                            United States District Judge

COMMISSIONER OF SOCIAL SECURITY,              Michael Hluchaniuk
                                              United States Magistrate Judge

            Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkts. 14, 16)**

## I.   PROCEDURAL HISTORY

A.   <u>Proceedings in this Court</u>

On December 19, 2014, plaintiff filed the instant suit seeking judicial review of the Commissioner's decision disallowing benefits.  (Dkt. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Avern Cohn referred this matter to the undersigned for the purpose of reviewing the Commissioner's decision denying plaintiff's claims.  (Dkt. 3).  This matter is before the Court on cross-motions for summary judgment.  (Dkts. 14, 16).  Plaintiff also filed a reply brief.  (Dkt. 17).  The cross-motions are now ready for report and recommendation.

B.    Administrative Proceedings

Plaintiff protectively filed a Title XVI application for supplemental security income on October 13, 2011 alleging a disability beginning May 1, 1986.[1] (Tr. 122-127). The Commissioner initially denied plaintiff's disability application on January 26, 2012. (Tr. 71-79). Thereafter, plaintiff requested an administrative hearing, and on May 9, 2013, she appeared with counsel before Administrative Law Judge ("ALJ") Kathleen H. Eiler, who considered her case de novo. (Tr. 30-48). In a July 16, 2013 decision, the ALJ determined that plaintiff was not disabled within the meaning of the Social Security Act.[2] (Tr. 16-25). The ALJ's decision became the final decision of the Commissioner on October 31, 2014, when the Social Security Administration's Appeals Council denied plaintiff's request for review. (Tr. 1-6). Plaintiff filed this suit on December 19, 2014. (Dkt. 1).

For the reasons set forth below, the Court concludes that the ALJ violated the treating physician rule by failing to give proper weight to plaintiff's treating

---

[1] Plaintiff filed a prior application, which resulted in a determination by another ALJ dated October 26, 2005. (Tr. 62-70).

[2] ALJ Eiler noted the prior decision and her responsibility to adhere to the principles set forth in *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997). *See also Lennard v. Sec'y of Health & Hum. Servs.*, 907 F.2d 598 (6th Cir. 1990); SSR 98-4(6). ALJ Hiler determined that claimant's condition "has changed based upon substantial medical evidence submitted; therefore, the residual functional capacity assessed herein has been further reduced from that assessed in the prior ALJ decision." (Tr. 16).

psychiatrist, Dr. C.A.N. Rao.  The Court therefore **RECOMMENDS** that

Plaintiff's Motion for Summary Judgment (Dkt. 14) be **GRANTED**, that

Defendant's Motion for Summary Judgment (Dkt. 16) be **DENIED**, and that,

pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner of Social

Security be **REVERSED AND REMANDED,** so that the ALJ can accord proper

weight to the opinion of the treating psychiatrist and give the required "good

reasons" in the notice of determination for the weight given.

## II.   FACTUAL BACKGROUND

### A.   ALJ Findings

 The ALJ applied the five-step disability analysis to plaintiff's claims and

found at step one that plaintiff did not engage in any substantial gainful activity

since October 13, 2011, the application date.  (Tr. 18).  At step two, the ALJ found

that plaintiff had the following severe impairment: bipolar disorder (20 C.F.R.

§ 416.920(c)).  (*Id.*)  At step three, the ALJ found that plaintiff did not have an

impairment or combination of impairments that met or equaled one of the listings

in the regulations.  (Tr. 19).

The ALJ determined that plaintiff had the residual functional capacity

("RFC") to perform:

> a full range of work at all exertional levels but with the
> following nonexertional limitations she can perform
> simple, routine, repetitive tasks with minimal, if any,

3

> changes in a routine work setting and no production rate
> pace work. She can occasionally interact with
> supervisors, but should have no more than minimal,
> superficial interaction with coworkers and the general
> public.

(Tr. 20). At step four, the ALJ determined that plaintiff had no relevant past work.

(Tr. 24). At step five, the ALJ concluded that based on plaintiff's age, education,

work experience and RFC, there are jobs that exist in significant numbers in the

national economy that plaintiff can perform and, therefore, she has not been under

a disability since October 13, 2011, the date the application was filed. (Tr. 24-25).

    B.    <u>Plaintiff's Claims of Error</u>

        1.    The ALJ erred by failing to give proper weight to treating
            physician, Dr. Rao

Plaintiff claims that her treating psychiatrist at Saginaw Psychological

Services, Dr. C.A.N. Rao, who had been treating her for her bipolar disorder for

three and one-half years prior to the hearing date, together with plaintiff's

therapist, Tamika Johnson, L.L.B.S.W., completed a medical source statement in

which they opined that plaintiff was markedly limited, or had no useful ability to:

        1.    Maintain attention and concentration for extended
            periods;

        2.    Perform activities within a schedule;

        3.    Maintain regular attendance;

        4.    Sustain an ordinary routine without special

supervision;

5.    Complete a normal work day or work week
      without interruption from psychologically based
      symptoms.

(Dkt. 14, at 8; Tr. 390). Plaintiff argues that the ALJ failed to defer to this opinion

as required by *Walker v. Sec'y of Health & Hum. Servs.*, 980 F.2d 1066, 1070 (6th

Cir. 1992). The *Walker* court specifically held:

> The reason for such a rule is clear. The treating physician
> has had a greater opportunity to examine and observe the
> patient. Further as a result of his duty to cure the patient,
> the treating physician is generally more familiar with the
> patient's condition than are other physicians.

*Id.* Plaintiff additionally alleges that in disregarding Dr. Rao's opinion, the ALJ

also failed to give the necessary "good reasons" for rejecting Dr. Rao's opinion.

SSR 96-2p; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546 (6th Cir. 2004);

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007).

In her decision, plaintiff claims that the ALJ acknowledged Dr. Rao's

opinion that plaintiff was "markedly" limited in some areas of concentration,

persistence, or pace, but afforded her opinion little weight alleging that it was

inconsistent with the objective evidence in the record; and that plaintiff showed

improvement and stability when compliant with her prescribed medications. (Tr.

22). Plaintiff avers that the ALJ provided little to no analysis for her conclusion

that Dr. Rao's opinion is not consistent with the objective evidence in the record.

Plaintiff indicates that the ALJ cites to Exhibit B-5F (Tr. 22); however, exhibits B1F-B4F contain medical records from before plaintiff's onset date, and the ALJ then just goes on to generically cite the remainder of the medical record.  Plaintiff claims that the ALJ fails to set forth specific examples of any objective evidence that conflicts with the opinions of plaintiff's treating psychiatrist, Dr. Rao.  Further, the ALJ's decision to reject the opinion of Dr. Rao by merely citing the entire record does not allow a subsequent reviewer a path of reasoning for meaningful review.

Plaintiff also points out that the ALJ cites several GAF scores (25, 55, 65) which further support Dr. Rao's opinion regarding plaintiff's limitations in CPP functioning.  (Tr. 23; citing Tr. 260, 272, 352).  However, the ALJ accords these scores little weight as they do not provide a reliable longitudinal picture of plaintiff's mental functioning.  (Tr. 23).

The ALJ's other rationale for disregarding the medical restrictions of Dr. Rao was that plaintiff showed improvement and stability when compliant with her medications.  Plaintiff does not dispute that there have been times when, as a result of her mental illness, she does not believe that she requires medication.  On one such occasion in March 2012, she was admitted to the Behavioral Health Unit at McLaren Bay Regional Medical Center for screaming nonsensical phrases, having delusions of seeing Jesus, yelling "release the kraken", and threatening self-harm.

6

(Tr. 348-349).  Plaintiff maintains that even when on proper medications, though, she has been unable to obtain stability, or show improvement except to stay out of the hospital.  For example, in October 2012, plaintiff's therapist, Kris Wheeler, reported that she had been receiving her medications through bi-weekly injections to ensure compliance with her medication regimen.  (Tr. 374).  Nevertheless, Ms. Wheeler indicated that plaintiff was sleeping throughout the day, lacked energy, and had increased social anxiety which caused her to stay at home a lot more.  *Id.* In January 2013, social worker Ms. Johnson noted that plaintiff continued to have difficulty with depression and anxiety despite taking daily medications.  (Tr. 382). Plaintiff argues that the medical record does not support the ALJ's conclusion that when plaintiff is taking her medications that she experiences significant improvements or stability that would allow her to return to the work force on a sustained basis.  To the contrary, on April 1, 2013, Ms. Johnson and treating physician Dr. Rao provided the medical source statement which indicated that plaintiff was markedly limited in multiple areas of concentration, persistence, or pace.  (Tr. 390).

The vocational expert testified that all of the jobs identified by the ALJ in her decision would be precluded if the hypothetical individual was off-task 15% of the work-day.  (Tr. 46).  The VE also indicated that all work would be precluded if the hypothetical individual missed work one time per week due to symptoms of

her illness; and that the most the individual could miss would be one-to-two days per month. (Tr. 47). Finally, the VE testified that if the hypothetical individual needed redirection by a supervisor 2-3 times per hour, all work would be precluded. (*Id*.)

Plaintiff contends that had the ALJ given controlling weight to Dr. Rao, a finding of disabled would have been mandated by the Social Security Regulations. Plaintiff seeks a reversal and an immediate award of benefits, or alternatively a remand for further proceedings to correct the legal errors.

C.    The Commissioner's Motion for Summary Judgment

1.    The ALJ properly evaluated the medical opinion of plaintiff's treating psychiatrist, Dr. Rao

The Commissioner contends that the ALJ considered the opinion of plaintiff's treating psychiatrist, Dr. Rao, but reasonably afforded it "little weight" because it was inconsistent with the "objective evidence and the records from Saginaw Psychological," which showed plaintiff's stability and improvement when she was compliant with her prescribed medications. (Tr. 22). The Commissioner avers that the ALJ specifically analyzed Dr. Rao's opinion and that the ALJ's determination was proper.

Plaintiff takes particular issue with the ALJ's determination to afford "little weight" to Dr. Rao's restrictions on plaintiff's concentration, persistence, or

8

"attendance" findings.[3]  Plaintiff argues that the ALJ failed to give a single example of objective evidence that conflicted with Dr. Rao's opinion.  To the contrary, however, the ALJ specifically identified the records from Saginaw Psychological as inconsistent with Dr. Rao's assessment.  (Tr. 22).  The ALJ noted that Dr. Rao's own reports indicated that plaintiff was "free from psychotic symptoms," that her medications and medical problems were "under control," and that her thought processes were described as "logical, relevant, and goal oriented" and "grossly logical."  (Tr. 379-88).  Also within these records, plaintiff reported to Dr. Rao that she felt free from mood swings, that she was taking care of her grandchildren, and that her prescription medications were helping.  (Tr. 379-80, 387-88).  In addition, although plaintiff at times complained of issues with sleep and depression, plaintiff reported to Dr. Rao that she was improving with the help of medication, and denied any mood swings.  (Tr. 372-88).

The ALJ additionally supported her according of "little weight" to Dr. Rao's opinion by considering prior records of Saginaw Psychological, and other objective medical evidence in the record.  (Tr. 22).  The ALJ also pointed out that plaintiff's medication reviews indicated that she had not been attending appointments regularly and was not regularly taking her medications.  (Tr. 22, Tr.

---

[3]  The undersigned notes that the parties use the term "attendance" and "pace" interchangably in their briefs, but it appears that they are referring to the same thing, namely plaintiff's pace limitations.

365).  The ALJ considered the evidence of non-compliance against records from Saginaw Psychological which indicated plaintiff's stability and improvement when compliant with her prescribed medications.  (Tr. 22).   The ALJ also supported her evaluation of Dr. Rao's opinion with the opinion from the DDS reviewing psychologist, Dr. Joe DeLoach, who opined that "compliance with treatment would enable the [plaintiff] to retain the capacity for performing simple and repetitive tasks on a sustained basis."  (Tr. 78).  The ALJ accorded "some weight" to these findings.  (Tr. 22, 78).

The Commissioner further contends that the ALJ fully complied with SSR 96-2p, by giving the requisite "good reasons" for discounting Dr. Rao's opinion by stating the reasons that her assessment was not consistent with the medical record from Saginaw Psychological which showed improvement and stability when plaintiff complies with her prescribed medications.  (Tr. 22).  Additionally, the ALJ indicated that plaintiff's self-reported that her symptoms were improving and that her medications were helping in the months preceding the assessment.  (Tr. 22, 371-73, 378-80, 387-88).  The ALJ also considered the opinion of the DDS medical psychologist that plaintiff merely had "moderate" limitations in the areas of concentration and persistence and that she could retain the ability to perform simple and repetitive tasks on a sustained basis when compliant with treatment.  (Tr. 22, 77-78).  The ALJ also noted that it was plaintiff's goal to get

10

back onto SSI and that it was her practitioner's goal to help plaintiff receive SSI. (Tr. 22-23, 371, 374-75, 381-84).

The Commissioner avers that Dr. Rao's RFC was not consistent with the objective medical evidence as a whole, but specifically with Dr. Rao's own medication reviews, plaintiff's self-reports to Dr. Rao, and the DDS medical opinion. For these reasons, the Commissioner argues that the ALJ properly declined to afford controlling weight to Dr. Rao's opinion. Further, the ALJ's discussion of Dr. Rao's opinion and why it was inconsistent with the record evidence amounted to "good reasons" for giving the opinion only "little weight" and was sufficiently specific enough to meet the requirements of SSR 96-2p.

        2.    Substantial evidence supports the ALJ's Step Five
            determination

The ALJ determined that plaintiff could perform a full-range of work at all exertional levels but with non-exertional limitations of simple, routine, repetitive tasks with minimal, if any, changes in a routine work setting and no production rate pace work. (Tr. 24). The ALJ presented a hypothetical to the VE that mirrored the RFC finding. (Tr. 24, 45-46). As discussed above, the Commissioner argues that the ALJ reasonably relied on Dr. Rao's medication reviews, plaintiff's self-reports to Dr. Rao regarding her symptoms, and the DDS medical opinion in determining plaintiff's RFC in the areas of concentration and

11

persistence.[4]  (Tr. 22-24).  The Commissioner claims that plaintiff does not object to the ALJ's RFC finding.  Therefore, the VE's response to the ALJ's hypothetical constituted substantial evidence upon which the ALJ could rely at step five.  *See Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001).  Plaintiff believes that the ALJ's step five finding is erroneous because the ALJ ignored the VE's testimony that plaintiff's concentration, persistence, or attendance would preclude her from employment.  However, the Commissioner contends that the ALJ properly accorded "little weight" to Dr. Rao's RFC assessment, and determined that at most, plaintiff had moderate limitations in the areas of concentration and persistence.  (Tr. 22-24).  As such, the Commissioner contends that the ALJ properly relied upon VE testimony which was given in response to a hypothetical question that mirrored the RFC.

D.   <u>Plaintiff's Reply</u>

In reply, plaintiff first points out that most of the findings that the Commissioner uses to support the ALJ's decision as being "inconsistent" with the objective evidence actually supports Dr. Rao's restrictions.  (Dkt. 17, at Pg ID 482-483).  As plaintiff noted previously, the ALJ cites to all of the evidence

---

[4]  The ALJ also found plaintiff to be partially credible regarding her allegations having to do with social functioning.  In fashioning the RFC, the ALJ therefore determined that plaintiff could occasionally interact with supervisors, but should have no more than minimal, superficial interaction with coworkers and the general public.  (Tr. 24).

12

without pointing to specific examples of inconsistencies with Dr. Rao's findings which is not proper under the holding of *Wilson*. *See* 378 F.3d at 544.

Plaintiff acknowledges that at times she was non-compliant with taking her medications, but avers that this is another symptom of her mental illness which significantly impacts her judgment and self-care. Plaintiff directs the court to the ruling in *Spiva v. Comm'r of Soc. Sec.*, 628 F.3d 346 (7th Cir. 2010), which held:

> The administrative law judge's reference to Spiva's failing to take his medications ignores one of the most serious problems in the treatment of mental illness - the difficulty of keeping patients on their medications. The drugs used to treat schizophrenia, for example, can make a patient feel drowsy and stunned. [References excluded] As a result he may be unwilling to keep taking them. The administrative law judge also ignored Spiva's testimony that he can't afford all the medications prescribed for him because he has no health insurance. And she ignored the finding that Spiva had scored only 20 on the Global Functioning assessment scale (which runs from 0 to 100) a score that indicates (so far as bears on this case) some danger of hurting himself or others.

*Id.* at 351; *see also Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989) (it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation). Plaintiff argues that these same factors apply here. On March 26, 2012, Dr. Rao, noted that prescribed medications were making plaintiff drowsy and that she was sleeping too much. (Tr. 365). On June 18, 2012, Dr. Rao reported that plaintiff remained drowsy and

felt off balance. (Tr. 368). In March 2013, plaintiff was involuntarily hospitalized and it was reported that plaintiff was having delusions, was screaming nonsensical phrases, and was at risk for self-harm. (Tr. 348-49). At this time, plaintiff was given a global assessment functioning score of 25. (*Id.*) Even when properly taking her medications, plaintiff has experienced on-going symptoms of her mental illness. Indeed, plaintiff has been hospitalized on numerous occasions and has tried several psychotropic medications. (Tr. 350). On January 19, 2013, plaintiff's therapist reported that despite plaintiff being compliant with her medications and treatment, she continued to have issues with depression and anxiety. (Tr. 382). While plaintiff acknowledges that she may be doing somewhat better with consistent use of her medications, plaintiff did experience many side-effects as a result of taking her medications, including: weight gain, joint stiffness, daytime drowsiness, and hair thinning and falling out. (Tr. 34, 37, 42, 43).

Finally, plaintiff claims that her treating psychiatrist Dr. Rao opined that she was markedly limited or unable to:

1. Maintain attention and concentration for extended periods;

2. Perform activities within a schedule;

3. Maintain regular attendance;

4. Sustain an ordinary routine without special supervision;

5.  Complete a normal work day or work week without interruption from psychologically based symptoms.

(Tr. 390).  While the ALJ accorded this opinion "little weight," she found that plaintiff had "moderate" difficulties with regard to concentration, persistence, or pace.  (Tr. 19).  In her RFC, however, the ALJ only restricted plaintiff to simple, routine, repetitive tasks with no production rate (production line) work.  (Tr. 20). Plaintiff argues that the RFC fails to account for her need for special supervision, extra breaks or interruptions, and absentees due to her illness.  Plaintiff claims that because of the flawed RFC, the hypothetical questions also failed to accurately portray her physical and mental impairments as required by *Ealy v. Commissioner of Social Security*, 594 F.3d 504, 516 (6th Cir. 2010).  Moreover, as noted in *Ealy*, moderate restrictions in concentration, persistence, or pace are not sufficiently accommodated by a restriction to simple, unskilled, routine work.  *Id.* at 516-17. For this additional reason, plaintiff claims that the RFC does not accurately portray her physical or mental impairments.

## III.  DISCUSSION

### A.  Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being

15

arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters*, 127 F.3d at 528. In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003)

(an "ALJ is not required to accept a claimant's subjective complaints and may . . .
consider the credibility of a claimant when making a determination of disability.");
*Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's
credibility determinations about the claimant are to be given great weight,
particularly since the ALJ is charged with observing the claimant's demeanor and
credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting
credibility to a certain degree is appropriate where an ALJ finds contradictions
among medical reports, claimant's testimony, and other evidence.").  "However,
the ALJ is not free to make credibility determinations based solely upon an
'intangible or intuitive notion about an individual's credibility.'"  *Rogers*, 486
F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact
are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the
Commissioner's decision merely because it disagrees or because "there exists in
the record substantial evidence to support a different conclusion."  *McClanahan v.
Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800
F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a
scintilla of evidence but less than a preponderance; it is such relevant evidence as
a reasonable mind might accept as adequate to support a conclusion."  *Rogers*, 486
F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard

17

presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits."

18

*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the

Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et

seq*.).  Title II benefits are available to qualifying wage earners who become

disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in

19

substantial gainful activity, benefits are denied without
further analysis.

Step Two:  If the claimant does not have a severe
impairment or combination of impairments, that
"significantly limits ... physical or mental ability to do
basic work activities," benefits are denied without
further analysis.

Step Three:  If plaintiff is not performing substantial
gainful activity, has a severe impairment that is expected
to last for at least twelve months, and the severe
impairment meets or equals one of the impairments listed
in the regulations, the claimant is conclusively presumed
to be disabled regardless of age, education or work
experience.

Step Four:  If the claimant is able to perform his or her
past relevant work, benefits are denied without further
analysis.

Step Five: Even if the claimant is unable to perform his
or her past relevant work, if other work exists in the
national economy that plaintiff can perform, in view of
his or her age, education, and work experience, benefits
are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

    C.    <u>Analysis</u>

        1.    Treating Physician–Dr. Rao

The undersigned agrees with plaintiff that the ALJ failed to give sufficiently good reasons for not giving controlling weight to the opinion of Dr. Rao, plaintiff's treating physician during the relevant time period. As both parties acknowledge, greater deference is generally given to the opinions of treating medical sources than to the opinions of non-treating medical sources. *Rogers v.*

*Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007).  "Closely associated with the treating physician rule, the regulations require the ALJ to always give good reasons in [the] notice of determination or decision for the weight given to the claimant's treating source's opinion."  *Id.* at 406 (citing § 404.1527(d)(2)).  Indeed, SSR 82-62 requires that "[t]he explanation of the decision must describe the weight attributed the pertinent medical and non-medical factors in the case and reconcile any significant inconsistencies. Reasonable inferences may be drawn, but presumptions, speculations and suppositions must not be used."  As plaintiff points out, several of the reasons stated by the ALJ are not supported by the record.  For example, the ALJ did not fully consider the reasons for plaintiff's failure to be compliant with her medications, including her mental impairment (bipolar disorder) itself.  On March 15, 2012, plaintiff was involuntarily admitted to the hospital in a very delusional state.  (Tr. 350).  Admitting physician, Adam Nicholas, M.D., noted that with regard to medication, plaintiff was restarted on Depakote, Risperdal, and Klonopin; however, she lacked the ability to consent for treatment.  *Id.*  At the time, plaintiff's GAF was assessed to be 25 which indicated that she was "considerably influenced by delusions or hallucinations or serious impairment, in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) or inability to function in almost all areas (e.g., stays in bed all day, no job, home, or friends)."  American

Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, p.

34 (4th ed., text rev. 2000). Dr. Nicholas also indicated that plaintiff would

require close psychiatric follow-up upon discharge and may require placement at

this point due to her history of noncompliance with medication, poor insight and

judgment, and based on the severity of her symptoms. (Tr. 350). Plaintiff's

medical history makes it clear that her mental impairment makes it difficult for her

to exercise good judgment with respect to her mental health decisions,

importantly, being compliant with medications. The ALJ did not discuss the

interplay between plaintiff's mental impairment and the role it plays with her non-

compliance, and how that ultimately affects her ability to engage in full-time

sustained work.

 The undersigned also finds that the ALJ did not fully consider the clinical

findings. With respect to Dr. Rao's findings the ALJ stated:

> The claimant's case worker and staff psychiatrist [Dr.
> Rao] at Saginaw Psychological Service Incorporated
> assessed the claimant with moderate understanding and
> memory limitations, and noted she could carry out
> simple and detailed instructions and make simple
> work-related decisions (B5F). They felt the claimant was
> no more than moderately limited in social interaction and
> adaption but was markedly limited in some areas of
> concentration, persistence, or pace (B5F). This opinion is
> afforded little weight as it is not consistent with the
> objective evidence and the records from Saginaw
> Psychological which show improvement and stability
> when the claimant complies with her medications as

> prescribed. The record also indicates that it is the
> practitioner's goal to get the claimant back on SSI (B5F).
> The undersigned acknowledges the possibility that a
> medical provider may express an opinion in an effort to
> assist a patient with whom he or she sympathizes for one
> reason or another to obtain disability status. Another
> reality which should be mentioned is that patients can be
> quite insistent and demanding in seeking supportive
> notes or reports from their physicians, who might
> provide such a note in order to satisfy their patient's
> requests and avoid unnecessary doctor/patient tension.
> While it is difficult to confirm the presence of such
> motives, they are more likely in situations where the
> opinion in question departs substantially from the rest of
> the evidence of record, as in the current case.

(Tr. 22).  The ALJ indicted that she discounted Dr. Rao's opinion based on the

objective evidence and the records from Saginaw Psychological, which the ALJ

concluded showed improvement and stability when plaintiff complies with her

medications.  Plaintiff is correct when she states that the ALJ generically cites to

the record in the case and not to specific citations within the record, making it

difficult for the undersigned to identify support for the ALJ's opinion.  For

example, the ALJ claims that when plaintiff takes her medications she shows vast

mental improvements and that these "types of reports are repeatedly noted

throughout the record."  (Tr. 22; citing B2F, B4F, B5F).  However, the span of

pages that the ALJ cites encompasses all of the medical records from Saginaw

Psychological, together with many that pre-date the relevant time period here.

Further, in October 2012, plaintiff's therapist, Kris Wheeler, reported that plaintiff

24

had been receiving her medications through bi-weekly injections which ensure compliance. (Tr. 374) Despite this compliance, plaintiff still experienced sleeping problems, a lack of energy, and had increased social anxiety which caused her to stay home more often. (*Id.*) Likewise, on January 19, 2013, plaintiff's social worker Tamika Johnson indicated that plaintiff continued having difficulty with depression and anxiety despite compliance with taking her prescription medications. (Tr. 382). Approximately two months later, Ms. Johnson and Dr. Rao issued their medical source statement which concluded that plaintiff was markedly limited in multiple areas of concentration, persistence, or pace. (Tr. 390). The ALJ's opinion does not account for plaintiff's periods of compliance with medications and the continuing symptomatology that she experienced. Moreover, the undersigned finds significant that it appears that plaintiff was in a period of medication compliance when her treating physician, Dr. Rao, issued the medical source statement which determined that she was markedly limited in areas of concentration, persistence, or pace.

The ALJ also "acknowledge[d] the possibly" that Dr. Rao's opinion could have been written to establish a finding of disability because the treating physician, in some way, sympathized with the plaintiff. (Tr. 22). However, this court has required that ALJs "articulate with specificity reasons for the findings and conclusions [he or she] makes." *See Morrison v. Comm'r of Soc. Sec.*, No.

25

14-10984, 2015 WL 1197689, at *16 (E.D. Mich. Mar. 16, 2015). And, as noted above, the ALJ's speculations fail to build an accurate and logical bridge between the evidence and her conclusions. *Id.*

As the Sixth Circuit stated: "This requirement [to always give good reasons] is not simply a formality; it is to safeguard the claimant's procedural rights. It is intended to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that [ ] he is not." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (citation omitted). Moreover, if the ALJ determined that plaintiff's treating physician's opinion should not be given controlling weight despite the medical evidence in support, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley v. Comm'r of Soc. Sec.*, 582 F.3d 399, 406 (6th Cir. 2009). This was not done either. And, even if Dr. Rao's opinion was not entitled to controlling weight, it was entitled to deference. 20 C.F.R. § 404.1527(d)(2)(I). As explained in SSR 96-2p,

Adjudicators must remember that a finding that a treating

26

> source medical opinion is not well-supported by
> medically acceptable clinical and laboratory diagnostic
> techniques or is inconsistent with the other substantial
> evidence in the case record means only that the opinion
> is not entitled to controlling weight not that the opinion
> should be rejected. Treating source medical opinions are
> still entitled to deference and must be weighed using all
> of the factors provided in 20 CFR 404.1527 and 416.927.
> In many cases, a treating source's medical opinion will
> be entitled to the greatest weight and should be adopted,
> even if it does not meet the test for controlling weight.

*18.

The undersigned finds that the ALJ did not adequately address why Dr. Rao's opinion should not be given controlling weight or even deference, as required by the regulations. 20 C.F.R. § 404.1527(d)(2). Although the ALJ's finding that plaintiff was not disabled ultimately may be justified, if an ALJ fails to explain why she rejected or discounted the opinion and how those reasons affected the weight accorded the opinion, the Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243 (citation omitted).

### 2.     Concentration, Persistence, or Pace

Another problem in this case is that the only other medical opinion in the record is that of the DDS medical consultant, who found no new and material evidence and adopted the RFC findings from a prior October 26, 2005 ALJ decision.  This prior decision determined that claimant "has only mild

27

impairments in her ability to perform activities of daily living and ability to
maintain social functioning. She has a moderate impairment in her abilities to
maintain concentration, persistence and pace. She may have difficulty with
complex tasks, but could perform unskilled tasks without difficulty." (Tr. 67).
The ALJ accorded "some weight" to these findings but determined that claimant's
allegations regarding her social limitations "partially credible" and therefore
warranted greater limitations than found by either the previous ALJ, or the DDS
medical consultant.  (Tr. 22).

Plaintiff alternatively argues that the ALJ erred by failing to account for her
"moderate" difficulties in maintaining concentration, persistence, or pace (CPP)
in both the RFC and the hypothetical questions to the vocational expert.  In
essence, plaintiff argues that even if the ALJ correctly weighed Dr. Rao's
opinion, she failed to accommodate her moderate CPP limitations in the RFC or
in the hypothetical questions to the vocational expert.

Because the undersigned has already determined that the ALJ failed to
properly weigh Dr. Rao's opinion in this case, the court will not address the
question of whether the ALJ appropriately accounted for plaintiff's limitations in
maintaining concentration, persistence, or pace as that question may become moot
on remand.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment (Dkt. 14) be **GRANTED**, that defendant's motion for summary judgment (Dkt. 16) be **DENIED**, and that the findings of the Commissioner be **REVERSED AND REMANDED,** so that the ALJ can accord proper weight to the opinion of the treating psychiatrist and give the required "good reasons" in the notice of determination for the weight given.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"

29

etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: September 1, 2015                    s/Michael Hluchaniuk
                                           Michael Hluchaniuk
                                           United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on September 1, 2015, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

                                           s/Tammy Hallwood
                                           Case Manager
                                           (810) 341-7887
                                           tammy_hallwood@mied.uscourts.gov

30